IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JAMI L. HAMILTON,                )
                                 )
            Plaintiff,           )
                                 )
v.                               )   Case No. CIV-12-282-KEW
                                 )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                 )
            Defendant.           )

**OPINION AND ORDER**

Plaintiff Jami L. Hamilton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 17, 1988 and was 22 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has no past relevant work. Claimant alleges an inability to work beginning January 1, 1994 which was amended at the administrative hearing to October 24, 2006 due to limitations resulting from anxiety with panic attacks, agoraphobia, diabetes

3

mellitus, Scheuermann's disease of the back, and tachycardia.

## Procedural History

On April 16, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 8, 2010, an administrative hearing was conducted before ALJ Charles Headrick in Tulsa, Oklahoma. On December 8, 2010, the ALJ issued an unfavorable decision. On April 24, 2012, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to propound a proper hypothetical question to the vocational expert at step five; (2) failing to properly consider the medical source

evidence; and (3) failure to perform a proper credibility analysis.

**Hypothetical Questioning of the Vocational Expert**

In his decision, the ALJ found Claimant suffered from the severe impairments of tachycardia; diabetes mellitus, type I; generalized anxiety disorder; and personality disorder. (Tr. 24). The ALJ determined Claimant retained the RFC to perform light work except that she was moderately limited in the ability to understand and remember detailed instructions and moderately limited in the ability to carry out detailed instructions. Claimant was also markedly limited in her ability to interact appropriately with the general public. (Tr. 28). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of sorting jobs, mail clerk, hand packaging jobs, and the sedentary work of assembly worker and miscellaneous labor, all of which he found existed in sufficient number nationally and regionally. (Tr. 34). He, therefore, concluded Claimant was not disabled. Id.

Claimant first contends the ALJ failed to pose appropriate hypothetical questions to the vocational expert who testified in this case. In his questioning, the ALJ had the following exchange with the vocational expert ("VE"):

ALJ: Assume the claimant to be, I believe she would have been age 20 at the alleged onset date with a high school education, the ability to read, write and use numbers. Assume the individual in general has the physical capacity to perform a full range

of light work. That she has functional or mental limitations consistent with Exhibit 6F.

VE: Judge, based on 6F, it would appear that she would be able to do a limited number of light jobs.

ALJ: Could you name –

VE: And sedentary.

ALJ: -- could you name any unskilled, competitive work such an individual could perform?

VE: Judge, I'm just finishing the statement where he indicated that, in his opinion, she could do simple, some complex work, but recommended that she not be around the general public. I could check, well I forgot – wrote that down, let me see. I think it was like marked – limited dealing with the public. And moderate in dealing with detail jobs. But should be able to do work that's not around a large group of people and coworkers, things like that. . . .

(Tr. 63).

The VE then identified various jobs in the national and regional economies which required light and sedentary work which he contended Claimant could perform. (Tr. 63-64).

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). However, "'[T]estimony elicited

by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) quoting Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). More pertinent to the arguments made in this case is the requirement that the ALJ "elicit sufficient vocational evidence for [the] court to determine whether there is a conflict." Carpenter v. Astrue, 537 F.3d 1264, 1270-71 (10th Cir. 2008)(citation omitted).

The ALJ's questioning which permits the VE to "assume" that the individual "in general" possesses the physical capacity to perform light work "consistent with" an exhibit does not state Claimant's impairments "with precision" as required by the case authority in this Circuit. *See* Collins v. Astrue, 2012 WL 3835854, 2 (10th Cir. (N.D.Okla.)). On remand, the ALJ shall set forth the precise physical and mental limitations in his hypothetical questioning that the VE is to consider in formulating his opinion on vocation.

**Consideration of Medical Source Evidence**

Claimant asserts the ALJ failed to explain the basis for giving the opinions of the state agency reviewing physicians "great weight" while not setting forth the weight given to the consultative examiners. On July 2, 2009, Dr. Denise LaGrand conducted a

7

consultative mental status examination on Claimant. She found Claimant's thoughts to be organized, logical, and goal-directed and she was able to stay focused on the exam. (Tr. 313). Claimant's orientation was appropriate, general information/long-term memory was adequate, delayed auditory recall was adequate, immediate auditory memory of numeric information was adequate, and auditory mathematic ability was average. Dr. LaGrand estimated Claimant's IQ at "low average or above (80 or higher)." She diagnosed Claimant with generalized anxiety disorder, especially in social situations and personality disorder, NOS, dependent, avoidant, obsessive-compulsive traits. She rated Claimant's GAF at 45. (Tr. 314).

Dr. LaGrand concluded Claimant's ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers was estimated to be below average due to her dependent/avoidant personality and anxiety. (Tr. 315). Based upon her overall cognitive level, her ability to think abstractly, and her ability to function appropriately socially and emotionally, Claimant's judgment was found to be adequate. Dr. LaGrand believed Claimant was open and honest and put her best effort on the exam, validating the results. Id.

The ALJ gave Dr. LaGrand's opinions "some weight" because Dr. LaGrand had the opportunity to examine Claimant and offered her opinion based upon the examination signs and findings. He accepted

8

Dr. LaGrand's diagnosis of Claimant's condition. The ALJ did "balance" Dr. LaGrand's findings as to Claimant's ability to perform adequately in a job situation to the mental health treatment records from Bill Willis Mental Health Center. (Tr. 32).

A review of the Bill Willis records shows Claimant reported to the facility on February 23, 2010. She told the person assessing her that she had problems with obsessive compulsive disorder, anxiety such that when she is around a lot of people she experiences social anxiety. She also reported problems with coping skills and sleep. She struggled in changing her routines. She also stated she had problems with her memory and cognitive processes. (Tr. 364).

Claimant was initially diagnosed with social phobia, generalized and obsessive-compulsive disorder. Her condition was noted as "severe." Claimant originally was assessed with a GAF of 55. (Tr. 369-70).

On March 11, 2010, Claimant reported having problems with her depression. She had been in bed and not wanting to be around people while being pressured to get out more. She remained on her medication. (Tr. 375).

On April 29, 2010, Claimant expressed problems with social anxiety. Going to the grocery store triggered her anxiety. (Tr. 377). Problems with treating her anxiety continued into June of 2010. (Tr. 378-79). She began making progress in July of 2010.

9

(Tr. 380). In August of 2010, Claimant did not have problems with depression and did not have problems with anxiety because she did not leave the house. (Tr. 381). In October of 2010, Claimant continued on her treatment plan. She had "no complaints at this time. Prognosis good." (Tr. 382).

This Court finds no error in the ALJ's analysis. Although he used a somewhat cryptic assignment of "some weight" to Dr. LaGrand's opinion, it is clear from his discussion that he accepted the diagnosis from Dr. LaGrand's examination but rejected the functional limitations based upon the subsequent treatment records. The records from Bill Willis supports this assessment. Claimant demonstrated a steady improvement in her condition under a treatment plan promulgated by the Bill Willis staff.

Claimant also contends the ALJ improperly afforded the opinions of non-examining consultative physicians more weight than Dr. LaGrand's opinion as an examining consultative physician. On August 3, 2009, Dr. Ron Smallwood completed a Mental RFC Assessment on Claimant. He concluded she was markedly limited in the area of the ability to interact appropriately with the general public. (Tr. 319). He also found Claimant was moderately limited in the areas of the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. (Tr. 318). Dr. Smallwood found Claimant could perform simple and some complex

tasks, was able to respond appropriately with routine supervision, was able to work in an environment in which she worked with a small number of familiar coworkers, was not able to work with the general public or in a large group of people, and could adapt to a work situation. (Tr. 320). Dr. Deborah Hartley reviewed the medical record and affirmed Dr. Smallwood's assessment. (Tr. 341).

The ALJ recognized that the opinions of non-examining physicians are entitled to less weight than those of examining physicians. (Tr. 32). Nevertheless, he gave Dr. Smallwood's and Dr. Hartley's opinions "great weight," finding the opinions and the medical evidence was consistent with the RFC he assessed. (Tr. 33).

In weighing the opinions, the ALJ has reversed the process of assessment as is frequently done with credibility determinations. The question that the ALJ is compelled to answer is whether the evidence and opinions give rise to a particular RFC rather than whether an RFC which is established first is supported by evidence and opinions. In this regard, the ALJ failed to establish the required basis for affording Dr. Smallwood's and Dr. Hartley's opinions "great weight" when many of their findings were similar or the same as those of the examining physician who he only assigned "some weight." On remand, the ALJ should re-evaluate all of the opinions of medical sources in light of the factors required in <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003).

Additionally, the ALJ noted that he did not have completed physical residual functional capacity forms from agency physicians in the case file. (Tr. 33). Should such information be required to fully assess Claimant's functioning, he should obtain these forms from any examining or non-examining medical source.

**Credibility Determination**

Claimant contends the ALJ failed to set forth with particularity the statements she made which were found to be not credible and those that were not discounted. The ALJ makes somewhat sweeping statements of murky rejection in connection with Claimant's credibility. On the one hand, the ALJ states in cryptic, undecipherable fashion that "in consideration of all medical evidence, there appears to be some inconsistency regarding functional limitations and allegations, yielding to a partial allegation credibility assumption." (Tr. 32). Later in the opinion, the ALJ states that he does not discount all of Claimant's complaints. (Tr. 33).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such,

will not be disturbed when supported by substantial evidence.  Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

On remand, the ALJ shall follow these guidelines in reassessing Claimant's credibility.  The ALJ should specifically state the functional limitations which he contends are not supported by the medical record.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

    IT IS SO ORDERED this 24th day of September, 2013.

                                        _____
                                        KIMBERLY E. WEST
                                        UNITED STATES MAGISTRATE JUDGE